No. 23-14037

In the
United States Court of Appeals
For the Eleventh Circuit

HENINSTON STEVEN FRANCIS,
Plaintiff-Appellant,

v.

M. MCBRIDE, individually and in his official capacity, and
J. LANG, individually and in his official capacity,
Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 20-cv-61234-AHS

# INITIAL BRIEF OF THE APPELLANT

Meaghan Goldstein, Esq. (FBN 1024796)
mgoldstein@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce De Leon Blvd., Floor 9
Miami, Florida 33134
Telephone (305) 372-1800

*Counsel for Appellant Heninston Francis*

## CERTIFICATE OF INTERESTED PERSONS

Under Rule 26.1-1(a)(2) of the Eleventh Circuit Rules, the plaintiff-appellant Heninston Francis sets forth the parties and entities that may have an interest in the outcome of this appeal and the case below:

1. Alfonso, Eric – Appellee
2. Alvarez, Tamatha – Appellees' Trial Counsel
3. Casey, Daniel – Appellee
4. Francis, Heninston Steven – Appellant
5. Francis, Martha Y. – Appellant's Trial Witness
6. Goldstein, Meaghan – Appellant's Appellate Counsel
7. Hollywood Police Department – Defendant (dismissed)
8. Kozyak Tropin & Throckmorton LLP – Appellant's Appellate Counsel
9. Lang, Justin – Appellee
10. Law Offices of Geoffrey B. Marks – Appellees' Appellate Counsel
11. Marks, Geoffrey B. – Appellees' Appellate Counsel
12. Martin, Lister & Alvarez – Appellees' Trial Counsel
13. McBride, Michael – Appellee
14. Memorial Regional Hospital South – Defendant (dismissed)
15. Moody, Cameron – Appellant's Appellate Counsel
16. Owoc, Jonathan – Appellee

17. Roussell, Brian – Appellee

18. Singhal, The Honorable Raag – United States District Court Judge

19. Wien, Jon Charles – Counsel for Hollywood Police Department

The appellant certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted this 21 day of May, 2025.

By: */s/ Meaghan Goldstein*
Meaghan Goldstein, Esq.
Florida Bar No. 1024796
mgoldstein@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

*Counsel for Appellant Heninston Francis*

## STATEMENT REGARDING ORAL ARGUMENT

The appellant, Heninston Francis, respectfully suggests that oral argument would aid the Court in its resolution of the issues raised in this appeal.

## TABLE OF CONTENTS

Certificate of Interested Persons ........ C-2
Statement Regarding Oral Argument ........ i
Table of Contents ........ ii
Table Of Citations ........ iv
Statement of Jurisdiction ........ ix
Statement of the Issues ........ x
I. Introduction ........ 1
II. Statement of the Case ........ 1
III. The Facts ........ 3
A. The Summary Judgment Stage ........ 4
B. The Trial ........ 6
1. Mr. Francis's Testimony ........ 6
2. Martha Francis's Testimony ........ 9
3. The Rule 50 Motion ........ 10
IV. Standard of Review ........ 13
V. Summary of the Argument ........ 14
A. Summary Judgment Was Granted in Error. ........ 15
1. The District Court Granted Summary Judgment Despite Finding a Genuine Dispute of Material Fact. ........ 17
2. The District Court Both Credited and Discredited Mr. Francis's Affidavit. ........ 19
3. The District Court Improperly Ruled that Mr. Francis's Evidentiary Showing was Speculative. ........ 22
4. Genuine Issues of Material Fact Preclude a Grant of Summary Judgment as to Alfonso and Casey. ........ 24
B. Judgment as a Matter of Law Was Granted in Error. ........ 32
1. The District Court Misapprehended the Law. ........ 33
2. Mr. Francis Presented a Prima Facie Case. ........ 35

3. The District Court Invaded the Province of the Jury. ..............................39
4. The Remaining Rule 50 Arguments Fail. ...............................................40
Conclusion .........................................................................................................42
Certificate of Compliance with Typeface Requirements And Type-Style Requirements ..................................................................................................43
Certificate of Service ........................................................................................44

# TABLE OF CITATIONS

## Cases

*Adams v. Austal, U.S.A., L.L.C.*,
754 F.3d 1240 (11th Cir. 2014) ....................18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................17

*Bailey v. Swindell*,
89 F.4th 1324 (11th Cir.) ....................42

*Blackburn v. Shire US Inc.*,
18 F.4th 1310 (11th Cir. 2021) ....................24

*Blanco v. Samuel*,
91 F.4th 1061 (11th Cir. 2024) ....................19

*Bogle v. Orange County Board of County Commissioners*,
162 F.3d 653 (11th Cir. 1998) ....................33

*Briggs v. Marshall*,
93 F.3d 355 (7th Cir. 1996) ....................41

*Brown v. City of Huntsville, Ala.*,
608 F.3d 724 (11th Cir. 2010) ....................29

*Busby v. JRHBW Realty, Inc.*,
513 F.3d 1314 (11th Cir. 2008) ....................33

*Butler v. Gualtieri*,
41 F.4th 1329 (11th Cir. 2022) ....................39

*Cantu v. City of Dothan, Ala.*,
974 F.3d 1217 (11th Cir. 2020) ....................31

*Cf. Bailey v.Swindell*,
145 S. Ct. 162 (2024)....................42

*Charles v. Johnson*,
18 F.4th 686 (11th Cir. 2021) ....................29

*Corbitt v. Vickers*,
929 F.3d 1304 (11th Cir. 2019) .................................................................. 36, 38

*Edmondson v. Velvet Lifestyles, LLC*,
43 F.4th 1153 (11th Cir. 2022) .......................................................................17

*Eghnayem v. Bos. Sci. Corp.*,
873 F.3d 1304 (11th Cir. 2017) ........................................................... 14, 35, 38

*Feliciano v. City of Miami Beach*,
707 F.3d 1244 (11th Cir. 2013) .................................................................. 17, 27

*Fils v. City of Aventura*,
647 F.3d 1272 (11th Cir. 2011) .................................................................. 16, 18

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ....................................................................4, 17

*Furcron v. Mail Ctrs. Plus, LLC*,
843 F.3d 1295 (11th Cir. 2016) .......................................................................17

*Gadsby v. Am. Golf Corp. of Cal.*,
557 F. App'x 837 (11th Cir. 2014) ............................................................ 22, 23

*Gibeau v. Nellis*,
18 F.3d 107 (2d Cir. 1994) ..............................................................................41

*Graham v. Connor*,
490 U.S. 386 (1989).............................................................................. 29, 36, 37, 38

*Great Am. All. Ins. Co. v. Anderson*,
847 F.3d 1327 (11th Cir. 2017) .......................................................................17

*Hadley v. Gutierrez*,
526 F.3d 1324 (11th Cir. 2008) ....................................................... 28, 29, 31, 36

*Hardigree v. Lofton*,
992 F.3d 1216 (11th Cir. 2021) .......................................................................16

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)..........................................................................................27

*Johnson v. City of Miami Beach*,
18 F.4th 1267 (11th Cir. 2021) .......................................... 27, 29, 30, 31, 32, 34

*Lane v. Celotex Corp.*,
782 F.2d 1526 (11th Cir. 1986) ...........................................................21

*Lee v. Ferraro*,
284 F.3d 1188 (11th Cir. 2002) ................................................ 28, 29, 31

*Loren v. Sasser*,
309 F.3d 1296 (11th Cir. 2002) ...................................................... 19, 20

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)............................................................................ 17, 27

*Mfg. Rsch. Corp. v. Greenlee Tool Co.*,
693 F.2d 1037 (11th Cir. 1982) ...........................................................40

*Middlebrooks v. Hillcrest Foods, Inc.*,
256 F.3d 1241 (11th Cir. 2001) ...........................................................14

*Mullenix v. Luna*,
577 U.S. 7 (2015)............................................................................ 31, 36, 37

*Oliver v. Fiorino*,
586 F.3d 898 (11th Cir. 2009) .............................................................35

*Pace v. Capobianco*,
283 F.3d 1275 (11th Cir. 2002) ...................................................... 22, 23

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)...............................................................................39

*Patterson v. Ga. Pac., LLC*,
38 F.4th 1336 (11th Cir. 2022) .............................................................19

*Pearson v. Callahan*,
555 U.S. 223 (2009)........................................................................... 27, 28

*Priester v. City of Riviera Beach, Fla.*,
208 F.3d 919 (11th Cir. 2000) .............................................................31

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) ....................................................................20

*Rivas-Villegas v. Cortesluna*,
595 U.S. 1 (2021)........................................................................................31

*Saucier v. Katz*,
533 U.S. 194 (2001)......................................................................................27

*Saunders v. Duke*,
766 F.3d 1261 (11th Cir. 2014) ............................................................ 32, 36

*Sims Crane Serv., Inc. v. Ideal Steel Prods., Inc.*,
750 F.2d 884 (11th Cir. 1985) ......................................................................39

*Slicker v. Jackson*,
215 F.3d 1225 (11th Cir. 2000) ............................................................ 33, 41

*Smith v. Owens*,
848 F.3d 975 (11th Cir. 2017) ......................................................................13

*Snowden v. Singletary*,
135 F.3d 732 (11th Cir. 1998) ......................................................................39

*Stephens v. DeGiovanni*,
852 F.3d 1298 (11th Cir. 2017) ............................................................ 34, 35

*Velazquez v. City of Hialeah*,
484 F.3d 1340 (11th Cir. 2007) ....................................................................41

**<u>Statutes</u>**

U.S. Const. amend. IV .....................................................................................35

28 U.S.C. § 1291............................................................................................. ix

28 U.S.C. § 1331............................................................................................. ix

28 U.S.C. § 1915(e) .........................................................................................2

42 U.S.C. § 1983.......................................................................................ix, 1

**Rules**

Fed R. Civ. P. 50 ........................................ 42

Fed R. Civ. P. 50(a)(1) ........................................ 42

Fed R. Civ. P. 56(a) ........................................ 16, 18

Fed R. Civ. P. 56(c)(4) ........................................ 23

Fed R. Civ. P. 56(e) ........................................ 23

Fed R. App. P. 26.1-1(a)(2) ........................................ 1

Fed R. App. P. 27(d)(2)(a) ........................................ 44

Fed R. App. P. 32(a)(5) ........................................ 44

Fed R. App. P. 32(a)(6) ........................................ 44

**Other Authorities**

Restatement (Second) of Torts § 767 ........................................ 40

Oliver Wendell Holmes, COLLECTED LEGAL PAPERS 237 (1920) ........................................ 39

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331, as this case presented a federal question under 42 U.S.C. § 1983. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, which grants jurisdiction of appeals from all final decisions of United States District Courts to the United States Courts of Appeals.

## STATEMENT OF THE ISSUES

1. Whether there are genuine disputes of material fact precluding the grant of summary judgment on qualified immunity in favor of Appellees Alfonso and Casey; and

2. Whether the district court erred in granting Appellees McBride and Lang's Rule 50 Motion for Judgment as a Matter of Law during trial.

## I. INTRODUCTION

This case arises from five Hollywood Police Department Officers' use of excessive force against the Appellant, Heninston Francis, during and after Mr. Francis's arrest. It is undisputed that Mr. Francis was beaten. The only question is whether that force was excessive—and that is a question properly answered by a jury, not a court. The district court, however, removed that question from the jury's purview by first granting summary judgment in three officers' favor and then granting, mid-trial, judgment as a matter of law in favor of the remaining two officers. Both decisions were in error. This Court should reverse the grant of summary judgment as to Eric Alfonso and Daniel Casey and reverse the grant of the motion for judgment as a matter of law as to Justin Lang and Michael McBride.

## II. STATEMENT OF THE CASE

Mr. Francis, pro se and in forma pauperis, filed an Amended Complaint under 42. U.S.C. § 1983 alleging that, during and shortly after his arrest, he was the victim of excessive force in violation of the Fourth and Fourteenth Amendments. [DE 16]. He named, as defendants, six Hollywood Police Department officers or detectives: Justin Lang, Michael McBride, Jonathan Owoc, Eric Alfonso, Brian Roussell,[1] and Daniel Casey. [DE 16 at 2–5]. Mr. Francis also asserted claims against the

[1] This name appears with various spellings, including Roussell, Rousell, and Rousseau, in different filings. This brief refers to him as Roussell, which is how the name is spelled on the trial court docket.

Hollywood Police Department, Memorial Regional Hospital South, and unknown John Doe actors. [DE 16 at 2–5].

The district court screened the Amended Complaint pursuant to 28 U.S.C. § 1915(e) and determined that Mr. Francis's claims should proceed against the individual defendants—McBride, Lang, Owoc, Alfonso, and Daniel.[2] [DE 18]. The defendants answered and asserted various defenses, including qualified immunity. [DE 48 at 2].

At the close of the discovery period, the defendants moved for summary judgment, asserting that they are all entitled to qualified immunity. [DE 92 at 3–8]. Mr. Francis opposed the motion for summary judgment and set forth his set of facts, supported by an affidavit. [DE 114, DE 115]. The district court denied the motion as to Lang and McBride and granted it as to Alfonso, Casey, and Owoc. [DE 135 at 10–14].

Mr. Francis, still acting pro se, proceeded to trial against Lang and McBride. Mr. Francis presented his case in chief and, after he rested, Lang and McBride raised a Rule 50 motion. After brief argument, the district court granted the motion,

---

[2] The district court also found that Mr. Francis stated a viable claim against Roussell. Because the United States Marshal Service was unable to serve Roussell, the district court later dismissed the claims against him without prejudice. [DE 143 at 1–3]. This appeal is not directed at that dismissal. The district court also dismissed Mr. Francis's claims against the Hollywood Police Department and against John Doe medical staff at Memorial Regional Medical Center. [DE 18 at 5–6].

reasoning, in sum, that Mr. Francis had not introduced any evidence to show that he was subject to excessive force after being handcuffed. [DE 253 at 39:24–40:18]. In a written order that followed, the district court reiterated that it granted the Rule 50 Motion "because Plaintiff failed to make out a prima facie case." [DE 220]. The written order included no further reasoning and instead relied on "the reasons stated in open court[.]" [DE 220].

Mr. Francis moved for a new trial, which the appellees opposed and the district court denied. [DE 226, 227, 236]. He also filed a Notice of Inquiry in which he requested "copies from this Honorable Court [of the] order granting Defendants Motion for Qualified Immunity." [DE 221 at 1]. In its paperless order denying that request, the district court made plain that it "did not grant qualified immunity in favor of the Defendants at trial." [DE 234].

Mr. Francis timely filed his notice of appeal. [DE 228]. This Court granted Mr. Francis's motions to proceed in forma pauperis and for appointment of counsel for the purposes of his appeal. [App. DE 21, 28-1].

## III. THE FACTS

Because this appeal challenges the district court's decisions at both the summary judgment stage and the trial stage, this brief presents the relevant facts from those two procedural moments separately.

### A. <u>The Summary Judgment Stage</u>[3]

At the summary judgment stage, Mr. Francis put forth the following facts in his sworn affidavit. [DE 115]. On July 13, 2017, Mr. Francis was beaten by McBride, Lang, Owoc, Casey, and Alfonso, who kicked and punched Mr. Francis in the presence of his mother and aunt. [*Id.* ¶ 3]. As of the date of the excessive force arrest, Mr. Francis was wearing a pre-trial release GPS ankle monitor, and he had never been classified as a "high risk arrest with potential violence." [*Id.* ¶¶ 6–7].

At approximately 7:45 am on July 13, 2017, Mr. Francis was a passenger in his mother's car, driving to meet with his pretrial officer to discuss an address change and find a charger for his ankle monitor. [*Id.* ¶¶ 9–10]. A police car signaled for his mother to pull over, and she did. [*Id.* ¶¶ 10–11]. Police officers then surrounded the vehicle with their guns drawn and ordered Mr. Francis, his mother, and his aunt out of the car. [*Id.* ¶¶ 11–12]. Lang opened the door where Mr. Francis was seated, grabbed Mr. Francis, and threw him to the ground. [*Id.* ¶ 13]. After throwing Mr. Francis to the pavement, Lang punched Mr. Francis in the back and neck and

[3] Because Mr. Francis was the non-moving party, the facts recited here are derived from Mr. Francis's Statement of Disputed Facts [DE 114] and supporting Affidavit [DE 115]. *See FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (At the summary judgment stage, "we view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). Undersigned counsel recognizes that Mr. Francis, a pro se incarcerated litigant, did not observe all procedural rules regarding his submission of these two documents, but as this brief explains in Section V.A.2, the affidavit is still properly considered.

smashed his head into the ground. [*Id.* ¶ 14]. McBride then joined in, along with other unknown officers, kicking Mr. Francis in the head and body. [*Id.* ¶ 15]. Mr. Francis begged for the beating to stop, but it continued. [*Id.*]. Mr. Francis was bleeding from his nose and mouth while his handcuffed mother and aunt watched, pleading for the officers to stop. [*Id.* ¶¶ 16–17]. Lang and Owoc pointed their guns at Mr. Francis's family and threatened that they "would get the same treatment" if they did not shut up. [*Id.* ¶ 18]. Mr. Francis was then handcuffed, and Lang dragged him to a police car while McBride and other officers continued to hit him. [*Id.* ¶ 19]. Before Mr. Francis was thrown into the car, Roussell pushed him against the car and punched him in the face and stomach. [*Id.* ¶ 20].

Mr. Francis was then transported to the Hollywood police station and placed in a holding cell for questioning. [*Id.* ¶ 21]. While questioning Mr. Francis, Alfonso and Casey became upset with him and kicked him as he lay on the cell floor begging for medical attention. [*Id.* ¶ 22]. Some hours later, McBride and Lang finally transported Mr. Francis to Memorial Regional Hospital for medical treatment—but proper medical attention was denied at Lang's direction. [*Id.* ¶¶ 23, 25]. A crime scene technician took photographs of Mr. Francis's injuries before he was transported from the hospital to Broward County Main Jail. [*Id.* ¶ 26]. At the jail, Mr. Francis was admitted to the infirmary to receive treatment for his injuries. [*Id.* ¶ 27].

At no time during this violent arrest did Mr. Francis resist or attempt to evade, and he posed no threat to the officers. [*Id.* ¶ 30]. Nevertheless, the officers beat him before and after handcuffing him *and* after he was restrained in a holding cell. [*Id.* ¶ 31].

### B. <u>The Trial</u>

Mr. Francis proceeded to trial against Lang and McBride. [DE 252, DE 253]. The jury was selected, sworn, and preliminarily instructed; Mr. Francis and the appellees delivered their respective opening statements; and Mr. Francis called himself as his first witness. [DE 252 at 125:17–133:14].

#### 1. *<u>Mr. Francis's Testimony</u>*

Mr. Francis testified as follows. On July 12, 2017, Mr. Francis spent his day at work and then slept overnight at his mother's house. [*Id.* at 134:12–25]. During the night, his pretrial release ankle monitor was beeping because it needed to be plugged into the charger that was at his previous residence. [*Id.* at 134:22–25]. On the morning of July 13, Mr. Francis asked his mother to drive him to visit his pretrial officer to explain to her why he was staying at his mother's house; Mr. Francis's aunt drove along with them. [*Id.* at 135:1–11]. On I-95 near Hollywood Boulevard, Mr. Francis noticed police cars following their car and told his mother to pull over and obey the officers' instructions. [*Id.* at 135:21–136:8]. With guns drawn, officers blocked the surrounding traffic on I-95 and took Mr. Francis's mother and aunt out of the car. [*Id.* at 136:9–12]. Officers approached Mr. Francis's side of the car, and

Mr. Francis set his phone down on the car seat and interlocked his hands above his head, in compliance with the officers' instructions. [*Id.* at 136:13–21]. One officer grabbed Mr. Francis and put his hands behind his back and, Mr. Francis, who acted "in no form to resist," asked why he was being arrested. [*Id.* at 136:18–25]. While Mr. Francis's hands were behind his back, one officer threw Mr. Francis to the ground, where other officers started kicking him. [*Id.* at 137:1–3]. One officer was on Mr. Francis's back, hitting him in the back of the head. [*Id.* at 137:3–4]. McBride and Lang were two of the officers who were beating Mr. Francis. [*Id.* at 137:6–7]. Throughout all of this, Mr. Francis did not resist, did not pose any threat, and did not evade his arrest. [*Id.* at 137:8–12]. He did, however, beg the officers to stop hitting him, and those cries were ignored. [*Id.* at 139:8–12].

Mr. Francis was taken to the police station and thrown into a holding cell, begging for medical attention. [*Id.* at 137:20–23]. His pleas for care were ignored until he mentioned that he would get an attorney involved. [*Id.* at 137:22–24]. At some point, crime scene technicians photographed Mr. Francis's injuries. [*Id.* at 137:24–138:1].

On cross-examination, the appellees' trial counsel elicited the following testimony. Before this arrest, Mr. Francis had been convicted of a felony and, at the time of the arrest, he was on a GPS ankle monitor as part of his pretrial release. [*Id.* at 141:1–9]. He had been in Dade County, although his pretrial officer knew he was

staying in Broward County. [*Id.* at 141:10–20]. Mr. Francis was not familiar with Hollywood Police Department policies and procedures regarding so-called "distractionary techniques." [*Id.* at 142:24–143:5]. Mr. Francis testified that his injuries were proof that McBride and Lang violated policy and procedure. [*Id.* at 143:15–21]. Counsel showed Mr. Francis the photographs that the crime scene technician took of his injuries and those photos were admitted as Defense Exhibit No. 5. [*Id.* at 144:5–145:8]. Mr. Francis testified that he was taken to Memorial Hospital as a result of the arrest, but denied that the hospital performed any tests, including CT scans of his lumbar back, chest, or brain, and denied having told hospital staff that he did not lose consciousness. [*Id.* at 145:17–146:22]. He testified that no tests were performed and that "[t]he only thing they did was provide Tylenol [and] take my vitals for clearance, as you stated." [*Id.* at 147:4–9]. Mr. Francis explained that he was having difficulty breathing, that he had pain in his ribs and his head, and that he lost consciousness. [*Id.* at 147:1–14]. Mr. Francis testified that, on July 17, his ribs were x-rayed at the jail, and counsel moved the imaging report into evidence as Defense Exhibit No. 13. [*Id.* at 153:5–154:20]. Finally, Mr. Francis agreed with counsel that the trial related only to McBride and Lang, and not to any other officers. [*Id.* at 154:23–155:1]. Mr. Francis declined to redirect himself and court adjourned for the day. [*Id.* at 155:5–11].

### 2. *Martha Francis's Testimony*

The next morning, Mr. Francis called his mother, Martha Francis, as his second witness. [DE 253 at 10:10–16]. Martha testified that, on the morning of the arrest, police stopped her, told her to put her hands up, and made sure she did not have a gun. [*Id.* at 12:6–7]. She testified that Mr. Francis also put his hands up, then an officer opened the car door, threw Mr. Francis to the ground, and started punching and hitting him. [*Id.* at 12:11–16]. Another officer, with his gun visible, approached Martha and told her not to look at the officers hitting her son. [*Id.* at 12:17–18]. She explained how she saw the officers hit and kick Mr. Francis "many times." [*Id.* at 13:4–11]. She summarized her testimony again, stating "I just see when they throw [Mr. Francis] on the ground and they start punching [Mr. Francis]." [*Id.* at 13:20–21].

Martha continued her testimony, stating that she did not see Mr. Francis resist or display any disrespect and that, instead, "when they opened the door, they – right away they push [Mr. Francis] on the ground. They start punching [him]. That's what I remember." [*Id.* at 14:2–13]. Mr. Francis tendered the witness. [*Id.* at 15:7].

On cross, counsel elicited that Martha did not know the meaning of "tensing" or "bracing." [*Id.* at 15:16–16:3]. When asked to describe any of the officers she saw, Martha stated that "one of them" was a chunky Black man and that the officers who hit Mr. Francis were wearing police uniforms. [*Id.* at 16:4–17:9]. Martha did

not recall testifying at her deposition that the chunky Black officer was the one who pulled Mr. Francis from the car. [*Id.* at 18:23–19:6]. She stated that the officers threw Mr. Francis to the ground face down, then handcuffed him, then rolled him onto his back. [*Id.* at 19:7–20:5]. Martha testified that, all told, the officers were hitting Mr. Francis for about ten minutes. [*Id.* at 20:11–15]. She described two officers who beat Mr. Francis and agreed that neither of the officers she remembered was Lang or McBride. [*Id.* at 21:4–18].

Mr. Francis then redirected Martha. [*Id.* at 23:3–6]. She testified that she remembered approximately four officers hitting Mr. Francis. [*Id.* at 23:9–11, 24:13–17]. Finally, Martha testified that Mr. Francis was holding his cell phone in his hand before he got out of the car. [*Id.* at 25:25–26:4]. The witness was excused. [*Id.* at 26:5–11].

Mr. Francis then introduced, without objection, his jail medical records as Exhibit 6, his hospital records as Exhibit 7, McBride's report as Exhibit 1, Lang's report as Exhibit 2, and an email from Mr. Francis to his pretrial officer as Exhibit 4. [*Id.* at 26:18–28:10]. Mr. Francis rested his case. [*Id.* at 28:19–21].

### 3. *The Rule 50 Motion*

Outside the presence of the jury, the appellees' trial counsel raised a Rule 50 motion in which they "renew[ed their] motion that [they] filed, summary judgment . . . with respect to the argument on qualified immunity." [CITE DE 253 at 29:21–

30:2]. They also advanced two new arguments—first, that Mr. Francis had not identified Lang and McBride as his abusers, and second, that Mr. Francis had not introduced evidence of injuries that were more than de minimis. [*Id.* at 30:3–11]. Mr. Francis opposed the motion, pointing to his testimony that he "did state that these two gentlemen, as well as with others," were involved in his beating and Martha's testimony that he "was thrown out of the car and beaten without resisting." [*Id.* at 34:1–3, 35:3–4]. The appellees' trial counsel then added another argument:

> I would just like to direct the Court to page 10 of 14 on docket entry number 135, which is this Court's order on the summary judgment. And the facts that this Court considered in denying the summary judgment with respect to these two detectives was the fact that plaintiff had signed an affidavit stating that his head was smashed to the ground, he was punched and kicked repeatedly, and after he was handcuffed he was -- they continued to punch and kick the plaintiff.
>
> And it would be our position that the Court was correct in denying the summary judgment at that time, but now those facts have not come out and so we would rely on Your Honor to grant a summary judgment with respect to the qualified immunity based on that.

[*Id.* at 35:10–36:7].

The district court, in response, stated that "[t]he only reason [it] didn't throw the case out at the beginning was because of [Mr. Francis'] argument that [he was] punched and kicked after [he was] in handcuffs" and identified this as "the reason that we're in trial, because of that singular fact, which this jury never heard." [*Id.* at 36:8–15]. Mr. Francis clarified that, if he had not testified clearly to these facts, it

was because he "didn't know really fully what to say and what not to say in front of the jury." [*Id.* at 36:16–20].

After breaking to review the trial transcripts, the district court rejected the premise that Mr. Francis had failed to identify Lang and McBride, because indeed he had. [*Id.* at 38:7–15]. As the district court paraphrased the testimony, "[i]n the transcript at one point Mr. Francis says that he saw these two officers as well as others hitting me; does not at any point mention these two officers kicking him or hitting occurring after being handcuffed[.]" [*Id.* at 38:7–15]. The district court then turned to McBride and Lang's reports, admitted as Exhibits 1 and 2, and noted that while McBride denied any physical contact with Mr. Francis, Lang admitted to "deliver[ing] multiple distraction strikes with a closed fist[.]" [*Id.* at 38:16–39:5]. Of this, the district court concluded that, based on the record evidence, "there seems to be no dispute really as to the facts. Detective Lang did hit plaintiff. The question is, is it permissible force? Is it unconstitutional? Is it excessive force?" [*Id.* at 38:24–39:10]. Finally, the district court ruled as follows:

> There's no evidence that's before this jury that this plaintiff, Mr. Francis, was hit or battered after he had his handcuffs on. In fact, the evidence is that Hollywood Police arrested him, that some people — some police officers hit him. That's not in dispute. The only evidence we have as to someone kicking him is it was a chunky black officer. Before me are two white male officers who both appear to be over 6 feet tall.

> I just find as a matter of law at the close of the plaintiff's case that there's insufficient evidence to send this case to the jury and that the Rule 50 motion should be granted.
>
> I also want to reiterate that the reason the Court didn't grant the motion for summary judgment was because of plaintiff's allegation that he was hit after he was placed in handcuffs. Nothing close to that came out in this trial.
>
> So for that reason and for those reasons, I am going to grant the Rule 50 motion.

[*Id.* at 39:24–40:18].

In the post-trial order that followed, the district court memorialized the grant of the Rule 50 motion "[f]or the reasons stated in open court[.]" [DE 220]. Finally, in a paperless order denying Mr. Francis's subsequent motion requesting "copies from this Honorable Court [of the] order granting Defendants Motion for Qualified Immunity," the district court stated unambiguously that it "did not grant qualified immunity in favor of the Defendants at trial." [DE 221, 234].

## IV. STANDARD OF REVIEW

This Court "review[s] a district court's decision on summary judgment *de novo*" and "appl[ies] the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

This Court reviews "the district court's ruling on a motion for judgment as a matter of law *de novo*, considering the evidence and the reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). "Thus," this Court has explained, "'[j]udgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict.'" *Id.* (quoting *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001)).

## V. SUMMARY OF THE ARGUMENT

The district court erred at two stages in its adjudication of this case, warranting reversal in both instances.

First, the district court erred by failing to properly consider the evidence in the record at the summary judgment stage. The district court, after accepting Mr. Francis's statement of facts and supporting affidavit for certain purposes, discounted them for others. The district court further erred by granting summary judgment in Alfonso and Casey's favor after expressly finding a genuine dispute of material fact as to their use of force. Finally, as to Alfonso and Casey, the district court credited their statement that they were not present *at the arrest scene* and ignored Mr. Francis's attestation that they beat him *in the holding cell*, without acknowledging that those two statements relate to two different locations and incidents.

Second, the district court failed to apply the correct law in considering, and granting, McBride and Lang's motion for judgment as a matter of law during trial. The district court made plain that it did *not* grant the motion on the basis of qualified immunity and, instead, granted judgment as a matter of law because "there's insufficient evidence to send this case to the jury" vis-à-vis "plaintiff's allegation that he was hit after he was placed in handcuffs. Nothing close to that came out in this trial." [DE 253 AT 40:7–18; DE 234]. This conclusion is premised on a misapprehension of the relevant law. An excessive force claim does not turn on whether the victim is handcuffed, and the district court erred by holding Mr. Francis to that artificial standard.

This Court should vacate the district court's orders on the summary judgment motion and the Rule 50 motion and remand this case for further consideration.

### A. <u>Summary Judgment Was Granted in Error.</u>

On September 6, 2022, the district court issued its Order on Defendants' Motion for Summary Judgment. (the "Summary Judgment Order"). [DE 135]. In this Order, the district court explicitly stated that "a genuine issue of material fact exists regarding whether Defendants McBride, Lang, Alfonso, and/or Casey used excessive force against the Plaintiff." [*Id.* at 13]. Nevertheless, and without

explanation, the district court granted summary judgment as to Alfonso and Casey.[4] [*Id*. at 13–14].

Regarding Alfonso and Casey, the district court wrote—in a single paragraph—that: (1) Mr. Francis did not claim that Alfonso and Casey were at the arrest scene; (2) Alfonso and Casey did not mention Mr. Francis's allegations that they beat him without provocation while he was handcuffed in the holding cell; (3) Alfonso and Casey merely assert that they were not present at the arrest scene; and (4) speculation and inferences based on speculation are not sufficient to create genuine issues of material fact. [*Id.* at 11]. Each of these premises is true in a vacuum, but they do not combine to warrant summary judgment. The grant of summary judgment as to Alfonso and Casey is in direct conflict with the district court's clear pronouncement that "a genuine issue of material fact exists" regarding Alfonso and Casey's use of excessive force. [*Id*. at 13].

The Eleventh Circuit reviews a grant of summary judgment on qualified immunity grounds *de novo*. *See Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011); *see also Hardigree v. Lofton*, 992 F.3d 1216 (11th Cir. 2021). Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also* Fed R.

[4] The district court properly denied summary judgment as to McBride and Lang. The district court also granted summary judgment in favor of Owoc, which the appellant does not challenge here.

Civ. P. 56(a). When deciding on a motion for summary judgment, a district court must "view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat*, 658 F.3d at 1307). Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is material if it may affect the outcome of the suit under governing law." *Id*. (citing *Anderson*, 477 U.S. at 248).

On a motion for summary judgment, "'the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153 (11th Cir. 2022) (citing *Anderson*, 477 U.S. at 249). Where there are conflicts between the facts alleged by the parties, the district court must credit the nonmoving party's version. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

### 1. *The District Court Granted Summary Judgment Despite Finding a Genuine Dispute of Material Fact.*

In the Summary Judgment Order, the district court explicitly concluded that "a genuine issue of material fact exists regarding whether Defendants McBride, Lang, Alfonso, and/or Casey used excessive force against the Plaintiff." [DE 135 at

13]. Despite this clear finding, the district court granted summary judgment as to Alfonso and Casey. [*Id*. at 13–14]. This is plainly wrong under abundant binding law explaining that summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fils*, 647 F.3d at 1287; *see also* Fed R. Civ. P. 56(a).

Mr. Francis alleged in his Amended Complaint, and attested in his summary judgment affidavit, that Alfonso and Casey got upset while interrogating Mr. Francis in the holding cell and kicked him while he was on the ground begging for medical attention. [DE 16 at 9; DE 115 ¶ 22]. As the district court acknowledged in its Summary Judgment Order, Alfonso and Casey "make no mention of [these] allegations" in their summary judgment papers and, instead, state only that they were not present at the scene of the arrest.[5] [DE 135 at 11; DE 90 ¶¶ 3–4; DE 91 ¶¶ 3–4]. And, as the district court recognized, this amounts to "a genuine issue of material fact" as to whether Alfonso or Casey used excessive force against Mr. Francis in the holding cell. [DE 135 at 13]. Finding a genuine dispute of material fact, the district court was duty-bound to deny summary judgment. *See, e.g.*, *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014) ("A court should grant summary

[5] In this discussion, the district court did not address Alfonso and Casey's affidavits filed in support of their reply, discussed in Section V.A.4.a, in which Alfonso and Casey acknowledge that they interacted with Mr. Francis in the holding cell. [DE 118-1 ¶¶ 5–6; DE 118-2 ¶¶ 5–6].

judgment only if the movant establishes that there is no genuine dispute as to any material fact."); *see also Blanco v. Samuel*, 91 F.4th 1061, 1070 (11th Cir. 2024) ("And we've recognized that a nonmoving party can create a genuine dispute of material fact even if its evidence 'consists primarily or solely of [its] own self-serving sworn statements or testimony.'" (quoting *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1351 (11th Cir. 2022)). For this reason alone, this Court can and should reverse.

2. *The District Court Both Credited and Discredited Mr. Francis's Affidavit.*

In some portions of the Summary Judgment Order, the district court credited Mr. Francis's affidavit as competent evidence. Taking Mr. Francis's affidavit as true and construing the evidence most favorable to him, as the non-moving party, the district court properly denied summary judgment as to McBride and Lang. In other portions, however, the district court either weighed the competing evidence and rejected Mr. Francis's, or disregarded Mr. Francis's version of events as "speculation and inferences based on speculation." Based on that improper analytical framework, the district court erroneously granted summary judgment in Alfonso and Casey's favor. This ruling must be reversed because the district court's inconsistent treatment of Mr. Francis's affidavit is incompatible with the law.

In the summary judgment context, courts construe pro se pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d

1296, 1301 (11th Cir. 2002). That said, pro se litigants are still required to conform to procedural rules. *See id.* at 1304. Mr. Francis's summary judgment submission—while it included a statement of material facts and a supporting affidavit—admittedly did not adhere stringently to the Southern District of Florida Local Rule 56.1(b). For that reason, the district court would have had the discretion to "strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate." S.D. Fla. L.R. 56.1(d). This is a discretionary call, however, and the district court may alternatively exercise its "broad discretion" to "overlook[] [the plaintiff's] noncompliance with Local Rule 56.1." *Reese v. Herbert*, 527 F.3d 1253, 1258, 1270 (11th Cir. 2008) (analyzing the analogous Northern District of Georgia Local Rule 56.1). Where (as here) a court "opt[s] not to deem the [movant's] statement of undisputed facts as admitted, however, the court implicitly [chooses] to base its decision on *all* of the evidentiary materials in the record on summary judgment." *Id.*

Instead of exercising its authority to *either* accept *or* discredit Mr. Francis's evidence, the district court did *both*. It alternately accepted and credited—or ignored or discredited—Mr. Francis's affidavit. At pages 6 through 8 of the Summary Judgment Order, for example, the district court recited Mr. Francis's "version of events . . . taken primarily from his sworn affidavit[.]" [DE 135 at 6]. Likewise, in

its analysis of McBride and Lang's summary judgment arguments, the district court explained that "the Court must accept Plaintiff's version of these facts." [*Id*. at 10 (citing DE 115 at 2)]. Because Mr. Francis's affidavit and McBride and Lang's affidavits conflicted, the district court found a "genuine issue of material fact as to whether the actions of Defendants McBride and Lang constituted reasonable use of force" and denied the motion as to those two movants. [*Id*. at 10, 13].

Just one paragraph later, though, the district court charted a different course. In assessing the summary judgment motion as it relates to Alfonso and Casey, the district court acknowledged "Plaintiff's allegations that the officers physically beat him without provocation while he was handcuffed in the holding cell." [*Id*. at 11]. More than a mere "allegation," this is a fact that Mr. Francis laid out in his sworn affidavit—which the district court failed to consider or address. [DE 115 ¶ 22; DE 135 at 11]. The district court, therefore, failed to "consider all of the evidence before it" as required. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986). The only alternative conclusion is that the district court resolved the plain factual dispute by weighing conflicting evidence, which it is not permitted to do. *See id.* Either way, the district court's failure to consider Mr. Francis's affidavit when adjudicating the motion as to Alfonso and Casey—after relying on that very affidavit in resolving the motion as to McBride and Lang—was error.

### 3. *The District Court Improperly Ruled that Mr. Francis's Evidentiary Showing was Speculative.*

After reciting the parties' competing versions of what transpired in the holding cell, the district court determined that Mr. Francis's "showing is not enough to preclude summary judgment" because "[s]peculation and inferences based on speculation . . . are not sufficient to create a genuine dispute of material fact at the summary judgment stage." [DE 135 at 11] (citing *Gadsby v. Am. Golf Corp. of Cal.*, 557 F. App'x 837, 840 (11th Cir. 2014); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)). The district court did not identify what "speculation" it was referring to, nor is either of the cases it cited applicable here.

*Gadsby* was a breach of contract action by former members of a golf club against the club's owners and operators. *Gadsby*, 557 F. App'x at 838. The case arose from a provision of the bylaws stating that when a member resigned, the resigned member's membership would be transferred to a new member, and the resigned member would be issued a percentage refund of their membership deposit. *Id.* A group of plaintiffs sued for breach of contract, seeking their deposit refunds. *Id.* At summary judgment, the most the plaintiffs offered was that "the new-member-to-to-transfer ratio was, for a period, 1:1, which could *possibly* have placed them at the top of the list." *Id.* at 839 (emphasis in original). Accordingly, this Court held that the *potential* that the plaintiffs *could have been* at the top of the list, without

more, was mere speculation and insufficient to raise a genuine issue of material fact at summary judgment. *Id.* at 839–40.

*Pace*, on the other hand, involved the police's alleged use of excessive force after a high-speed chase. *Pace*, 283 F.3d at 1276–77. The chase ended when the driver pulled into a dead-end street and was pinned in by police. *Id.* at 1277. Within moments, the police fired multiple rounds through the windshield and killed the driver. *Id.* The plaintiff, the driver's mother, sought to establish a genuine issue of material fact through an affidavit of a witness who "observed motion in the red car which [he] believe[d] was [the driver] raising his hands towards the roof of his car in an attempt to surrender." *Id.* at 1278. This Court held that Federal Rule 56(e) was clear that "opposing affidavits *shall* be made on personal knowledge" and that "a statement that the affiant believes something is not in accordance with the Rule." *Id.* at 1278–79 (emphasis in original). Therefore, this Court determined, it was error for the district court to find a genuine issue of material fact based on an affidavit that merely what the witness "believed" to have seen. *Id*. at 1279.

Mr. Francis's affidavit is nothing like those at issue in *Gadsby* or *Pace*. His affidavit does not say that Alfonso and Casey "possibly" beat him, as in *Gadsby*. *See Gadsby*, 557 F. App'x at 839. Nor does Mr. Francis say that he "believes" Alfonso and Casey beat him, as in *Pace*. *See Pace*, 283 F.3d at 1278. On the contrary, Mr. Francis did exactly what is required under Rule 56(c)(4): Mr. Francis stated in an

affidavit based on his personal knowledge that, during questioning, Alfonso and Casey "became upset and kicked [him] as [he] layed on the floor begging for medical assistance" and that "[e]ven after [he] was handcuffed the beating continued . . . as [he] was beaten and kicked while in a holding cell by Defendants Alfonso and Daniel [Casey]." [DE 115 ¶¶ 21–22, 31].

Mr. Francis's sworn statement that Alfonso and Casey beat him while he was handcuffed in his holding cell was not speculative and created a genuine issue of material fact as to whether Alfonso and Casey used excessive force. *See Blackburn v. Shire US Inc.*, 18 F.4th 1310 (11th Cir. 2021) ("We have held that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") (cleaned up), *certified question answered sub nom. Blackburn v. Shire U.S., Inc.*, 380 So. 3d 354 (Ala. 2022).

#### *4. Genuine Issues of Material Fact Preclude a Grant of Summary Judgment as to Alfonso and Casey.*

Setting aside the procedural errors, the district court erred on the merits when it granted summary judgment in favor of Alfonso and Casey. Alfonso and Casey are not entitled to qualified immunity because there are genuine disputes of material fact as to whether they subject Mr. Francis to excessive force while he was detained in the holding cell.

a) The District Court Failed to Recognize a Genuine Dispute of Material Fact as to Alfonso and Casey's Use of Force.

Addressing Alfonso and Casey, the district court again recited both parties' versions of the events. [DE 135 at 11]. The district court noted the following: (1) Mr. Francis does not claim that Alfonso and Casey were involved at the scene of his arrest; (2) Mr. Francis alleged that Alfonso and Casey physically beat him while he was handcuffed in his holding cell;[6] (3) Alfonso and Casey assert that they were not "at the scene of the accident"; and (4) Alfonso and Casey "make no mention of [Mr. Francis's] allegations that [they] physically beat him without provocation while he was handcuffed in the holding cell." [*Id.*]. These facts talk across one another: Mr. Francis attests that Alfonso and Casey beat him in the holding cell. [DE 115 ¶ 22, 31] Alfonso and Casey say they were not at the scene of the arrest. [DE 90 at ¶¶ 4–5; DE 91 ¶¶ 4–5]. One has nothing to do with the other: the arrest happened on the side of I-95 and the holding cell was located at the Hollywood Police Department.

In additional affidavits filed with their summary judgment reply, Alfonso and Casey concede as much, as they offer some new specific facts about their

[6] Mr. Francis questions the district court's use of the word "alleged," which suggests an untested allegation as in a complaint. Here, Mr. Francis did *allege* that Alfonso and Casey kicked him while he was detained in a holding cell, but he also *attested* to the same facts in his summary judgment affidavit, which the district court did not address. [DE 16 at 9; DE 115 ¶ 22, 31]

interactions with Mr. Francis in the holding cell. [DE 118-1 at ¶¶ 4–6; DE 118-2 ¶¶ 4–6]. In his reply affidavit, Casey states, in relevant part, the following three facts:

> 4. When I arrived at work, late that day, Heninston Francis had already been arrested and was at the police department.
> 5. Mr. Francis was asked if he wished to speak about the domestic violence allegations against him, which he declined to do.
> 6. At no time did I hit, kick or strike Mr. Francis in any way.

[DE 118-1 at ¶¶ 4–6]. Similarly, Alfonso attests in part as follows:

> 4. When I arrived at work, late that day, Heninston Francis had already been arrested and was at the police department.
> 5. I asked Mr. Francis if he wished to speak about the domestic violence allegations against him, which he declined to do.
> 6. I did not have any physical contact with Mr. Francis and did not hit, kick or strike him in any way.

[DE 118-2 at ¶¶ 4–6].

When viewed in the light most favorable to Mr. Francis, these facts—which the district court did not address in the Summary Judgment Order—present genuine issues of material fact regarding whether Alfonso and Casey used excessive force. Mr. Francis states that he was handcuffed on the floor of his holding cell and begging for medical attention as Alfonso and Casey kicked him. [DE 115 ¶¶ 21–22, 31]. Alfonso and Casey's reply affidavits state that Alfonso and Casey were present at the police station and interacted with Mr. Francis, but never hit, kicked, or struck him. [DE 118-1 ¶¶ 4–6; DE 118-2 ¶¶ 4–6]. Facing these opposing stories, the district court was required to credit Mr. Francis's version of the events and resolve all doubts

in favor of Mr. Francis. *See Feliciano*, 707 F.3d at 1252; *see also Lujan*, 497 U.S. at 888. The court below erred when it failed to do so. *See e.g.*, *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1271–75 (11th Cir. 2021) (finding that in the light most favorable to the plaintiff, the officer was not entitled to qualified immunity where, after the arrest, he gratuitously struck the plaintiff who was fully secure in his holding cell, not resisting, not posing a safety threat, and not attempting to flee). This Court should reverse the grant of summary judgment as to Alfonso and Casey.

b) Alfonso and Casey Are Not Entitled to Qualified Immunity.

Qualified immunity protects government officials performing discretionary functions from civil liability unless they violate "clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a two-step inquiry. The first question is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, was that constitutional right "clearly established" at the time of the violation? *Id.* These questions may be answered in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the facts taken in the light most favorable to Mr. Francis show that Alfonso and Casey violated Mr. Francis's clearly established constitutional right to be free from the use of excessive force. Thus, Alfonso and Casey are not entitled to qualified immunity.

The district court, in its discordant order, agreed. There, the district court correctly concluded that "there was a clearly established constitutional law at the time of the alleged violation, namely, the right of a pre-trial detainee to be free from the unreasonable use of force under the Fourth Amendment objective reasonableness standard as opposed to the more generalized notion of 'substantive due process' under the Fourteenth Amendment." [DE 135 at 13]. And, the district court found, there was "a genuine issue of material fact . . . regarding whether Defendants McBride, Lang, Alfonso, and/or Casey used excessive force against the Plaintiff." [*Id.*]. Despite this, the district court erroneously granted summary judgment as to Alfonso and Casey. [*Id.* at 13–14]. This Court should similarly find that Alfonso and Casey are not entitled to qualified immunity.

i. Alfonso and Casey Beating Mr. Francis in His Holding Cell Violated Mr. Francis's Constitutional Right to be Free from Excessive Force.

The Fourth Amendment's guarantee of freedom from unreasonable searches and seizures encompasses the right to be free from an officer's use of excessive force during an arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). In cases alleging excessive force, whether a plaintiff's constitutional rights were violated is governed by the Fourth Amendment's objective reasonableness standard. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). An officer's use of force is judged on a "case-by-case basis from the perspective of a reasonable officer," and

depends on "the facts and circumstances of each particular case" and a non-exhaustive list of factors including: "the severity of the crime at issue"; (2) whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 738 (11th Cir. 2010); *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Charles v. Johnson*, 18 F.4th 686, 698–699 (11th Cir. 2021).

The Eleventh Circuit "has ruled specifically that a police officer violates the Fourth Amendment if he uses gratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers." *Johnson*, 18 F.4th at 1272. In *Hadley*, this Court held that an officer used excessive force when he punched a suspect a single time who was handcuffed and was not struggling or resisting. *Hadley*, 526 F.3d at 1330. In *Lee*, this Court held that an officer's use of force was excessive after the plaintiff was arrested, handcuffed, and completely secure, and after any danger to the officers or risk of flight was gone. *Lee*, 284 F.3d at 1199. Finally, in *Johnson*, this Court held that an officer's use of force was excessive where the officer struck the plaintiff in his holding cell after the plaintiff was arrested, fully secured, not moving, resisting, or attempting to flee, and there was no need to use any force against the plaintiff. *Johnson*, 18 F.4th at 1273.

When viewed in the light most favorable to Mr. Francis, the facts demonstrate that Alfonso and Casey used excessive force on Mr. Francis. Mr. Francis's affidavit alleges that Alfonso and Casey kicked him as he lay on the floor of his holding cell, handcuffed, begging for medical assistance. [DE 115 ¶¶ 21–22, 31]. Mr. Francis further states that he was not resisting, attempting to evade, or posing a threat to the officers. [DE 115 ¶¶ 30–31]. As in *Johnson*, the *Graham* factors weigh in favor of Mr. Francis. *See Johnson*, 18 F.4th at 1273. Mr. Francis attested that he was handcuffed, in a holding cell, and on the floor begging for medical assistance when Alfonso and Casey kicked him—these facts show that he posed no immediate threat to the officers' safety. [DE 115 ¶¶ 21–22, 30–31]. Mr. Francis was arrested and fully secure in the holding cell and, therefore, could not have been actively resisting arrest or attempting to evade arrest by flight—and, indeed, he attested that he was not. [*Id.*]. In the light most favorable to Mr. Francis, Alfonso and Casey had no need to use force of any kind. Accordingly, a reasonable jury could find that Alfonso and Casey used excessive force when "[they] entered the holding cell and forcibly struck [Mr. Francis], who was then secure, not resisting, and not a safety threat to any officers. *Johnson*, 18 F.4th at 1273.

ii. Mr. Francis's Right to be Free from Excessive Force is Clearly Established.

A right is clearly established when it is "sufficiently clear that every reasonable officer would have understood that what he is doing violates that right."

*Mullenix v. Luna*, 577 U.S. 7, 11 (2015). "The usual way of establishing that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or this Court found a violation based on materially similar facts." *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1232 (11th Cir. 2020). "In the context of Fourth Amendment excessive force claims, [the Eleventh Circuit has] noted that generally no bright line exists for identifying when force is excessive; we have therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000).

Here, "existing precedent [places] the statutory of constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7–8 (2021). Mr. Francis, like the plaintiff in *Johnson*, was fully secured when he was beaten inside of a holding cell. *See Johnson*, 18 F.4th at 1274. This Court concluded that as of March 24, 2017—when the *Johnson* plaintiff was battered—Eleventh Circuit case law "clearly established that an officer violates the Fourth Amendment when he uses gratuitous force against an arrestee who is fully secured, not resisting arrest, and not posing a safety threat to the officer. *Id.* (citing *Hadley*, 526 F.3d at 1330; *Lee*, 284 F.3d at 1198).

Mr. Francis's arrest and detainment occurred on July 13, 2017, almost a full four months after the events in *Johnson*. [DE 115 ¶3]. Therefore, binding and on-point precedent put Alfonso and Casey on notice as of July 13, 2017, "that it was unlawful to strike [Mr. Francis] after his arrest was affected, he was fully secured inside a holding cell, and he was not resisting or attempting to flee." *See Johnson*, 18 F.4th at 1274. When the facts are taken in the light most favorable to Mr. Francis, Alfonso and Casey were not entitled to qualified immunity, and the court below erred in granting Alfonso and Casey's motion for summary judgment after reaching the same conclusion itself. [DE 135 at 12–14].

**B. <u>Judgment as a Matter of Law Was Granted in Error.</u>**

The district court granted judgment as a matter of law because, in its view, "there [wa]s insufficient evidence to send this case to the jury" regarding "plaintiff's allegation that he was hit after he was placed in handcuffs. Nothing close to that came out in this trial." [DE 253 AT 40:7–18]. And the district court was clear that its ruling was based on a purported "fail[ure] to make out a prima facie case," and not on the basis of qualified immunity. [DE 220, DE 234]. In other words, the district court's reasoning can only be read to mean that the application of handcuffs is a necessary aspect of the prima facie case, and that is not the law. *See Saunders v. Duke*, 766 F.3d 1261, 1265 (11th Cir. 2014) (noting that a police officer violates the Fourth Amendment when "he or she uses gratuitous and excessive force against a

suspect who is under control, not resisting, and obeying commands”). Because the district court’s ruling was premised on a misapprehension of the law, this Court should reverse.

In evaluating a Rule 50 motion, the court must “consider all of the evidence in a light most favorable to the plaintiff and grant the plaintiff the benefit of all reasonable inferences.” *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000). The appellate court “may affirm a judgment as a matter of law only if the facts and inferences “point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict.” *Id.* (quoting *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998)).

*1. <u>The District Court Misapprehended the Law.</u>*

As an initial matter, the district court applied the wrong law to Mr. Francis’s excessive force claim. The district court labored under the misbelief that handcuffs are a necessary precursor to an excessive force claim and explicitly based its ruling on that mistake of law. [DE 253 AT 40:7–18; DE 220, DE 234]. Mr. Francis would thus prevail under even the most deferential abuse-of-discretion standard. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1319 (11th Cir. 2008) (“[F]or a district court to apply the wrong legal standard is an abuse of discretion.”). Because this case calls for a far stricter *de novo* review, Mr. Francis is entitled to the same relief.

"This Court has ruled specifically that a police officer violates the Fourth Amendment if he uses gratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers." *Johnson*, 18 F.4th at 1272. While a "suspect who is secure" may *often* translate to a "suspect who is handcuffed," the law does not require it.

In *Stephens v. DeGiovanni*, 852 F.3d 1298 (11th Cir. 2017), for example, this Court reversed a grant of summary judgment based on qualified immunity in an excessive force case. There, an officer attempting to make a valid arrest "twice slugged Stephens in his chest, each time slamming into the car-driver's seat." *Id*. at 1322. The officer then "grabbed and twisted his hand, so the palm faced up, then forced the last three fingers on Stephens's right hand backward toward his forearm[.]" *Id*. at 1323. Only then—after using all this force—did the officer finally handcuff Stephens. *Id*. at 1308. This Court acknowledged that the officer was in the process of arresting Stephens for a crime, albeit a minor one, to which he later pled no contest. *Id.* at 1320–21. Nevertheless, this Court reversed the grant of qualified immunity because there was "no evidence Stephens attempted to resist Deputy DeGiovanni's investigation ending in his arrest or to evade his arrest by fleeing. . . . Through it all, Stephens was compliant . . . Stephens never attempted to flee the scene of his arrest." *Id*. at 1323. On these facts, this Court determined that the district

court erred in granting summary judgment in the officer's favor on Stephens's excessive force claim and remanded the case for further proceedings. *See id.* at 1329.

*Stephens* illustrates that the presence of handcuffs is immaterial, or at least not essential, to the excessive force analysis. Stephens was not handcuffed when he was subject to violence at the hands of his arresting officer, and this Court determined that he presented a viable excessive force claim nonetheless. Here, the district court erred under any standard by failing to properly state and apply the relevant law, and the Rule 50 order should be reversed.

2. *Mr. Francis Presented a Prima Facie Case.*

Separate from the district court's application of the wrong law, the evidence offered in Mr. Francis's case in chief satisfied the elements necessary for a jury to find in his favor. The district court, therefore, erred by entering judgment as a matter of law. *See Eghnayem*, 873 F.3d at 1313 ("Judgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." (cleaned up)).

The Fourth Amendment, incorporated to the states through the Fourteenth Amendment, provides a "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. This right includes, in particular, "the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (citing

*Graham*, 490 U.S. at 394–95). "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley*, 526 F.3d at 1330. *See also Saunders*, 766 F.3d at 1265 (This Court has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands[.]").

To make out an excessive force claim, a plaintiff must show two things: "(1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019).

Here, there is no dispute as to the first element: a seizure undoubtedly occurred. Mr. Francis testified at length about his arrest and detention; the appellees' trial counsel referred several times to "the day of your arrest" in her questioning; and McBride and Lang's reports of the incident were entered into evidence. [*See e.g.*, DE 253 AT 136:13–177:22 (Mr. Francis describing his arrest); *id*. at 141:5–6, 143:15–17 (appellees' counsel inquiring about "the day of your arrest"; Exhibits No. 1 and 2 (McBride and Lang's reports)].

As to the second element, Mr. Francis offered evidence from which a reasonable jury could determine that "the force used to effect the seizure was unreasonable." *See Corbitt*, 929 F.3d at 1315. Whether force was "reasonable" is measured under the objective standard set forth in *Graham*, which requires the court

to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake[.]" *Graham*, 490 U.S. at 388. The applicable factors include "the severity of the crime at issue"; "whether the suspect poses an immediate threat to the safety of the officers or others"; and whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Taking these factors in reverse order, Mr. Francis testified that he was obeying commands: "They ordered me to interlock my hands above my head, which I did." [DE 253 at 136:18–19] He testified that he "didn't resist," that he "didn't pose any threat to them," and that he "wasn't evading." [*Id.* at 137:8–12]. A reasonable jury could therefore conclude that Mr. Francis was not "actively resisting or attempting to evade arrest by flight." *See Graham*, 490 U.S. at 396.

Mr. Francis and Martha both testified that the only item he held before getting out of the car was his phone, and Mr. Francis testified that he put the phone down on the seat before he was pulled out of the car and thrown to the ground. [DE 252 at 136:13–21; DE 253 at 25:25–26:4]. And Martha testified that Mr. Francis was not resisting or being disrespectful to the officers. [DE 253 at 14:2–13]. In other words, the evidence supports the conclusion that Mr. Francis posed no "immediate threat to the safety of the officers or others." *See Graham*, 490 U.S. at 396.

Finally, as to the first consideration identified in *Graham*: the severity of the crime. The trial record is silent as to the reason for his arrest, pursuant to the district courts *in limine* order excluding evidence of "the nature and or alleged allegations involving one of his pending criminal case[s]" at trial. [DE 194 at 1, 5]. Mr. Francis testified that he did not know why he was being arrested, but that he knew an arrest was possible when he encouraged his mother to pull over and cooperate with law enforcement. [DE 252 at 136:5–8, 22:25]. At best, then, this factor weighs neutrally or cannot be assessed on the instant trial record.

Because Mr. Francis offered evidence to show that he posed no "immediate threat to the safety of the officers or others" and that he was not "actively resisting arrest or attempting to evade arrest by flight," a reasonable jury could have concluded that the force used against him was objectively unreasonable. *See Graham*, 490 U.S. at 396.

Mr. Francis presented a sound prima facie case for excessive force. He proffered evidence from which the jury could have determined that "a seizure occurred" and "that the force used to effect the seizure was unreasonable." *Corbitt*, 929 F.3d at 1315. Thus, even if the district court had applied the correct law—it did not—, Mr. Francis is entitled to reversal. *See Eghnayem*, 873 F.3d at 1313 ("Judgment as a matter of law is appropriate only if the evidence is so

overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." (cleaned up)).

### 3. *The District Court Invaded the Province of the Jury.*

By erroneously granting judgement as a matter of law, the district court deprived Mr. Francis the opportunity to have his case adjudicated by those best suited to do so—"a jury of laymen," with all their "common sense" and the 'passional elements in our nature,'" who "keep the administration of law in accord with the wishes and feelings of the community." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 343–44 (1979) (Rehnquist, J., dissenting) (citing Oliver Wendell Holmes, COLLECTED LEGAL PAPERS 237 (1920)). Those jurors may have believed Mr. Francis's testimony or not; they may have found McBride and Lang's conduct reasonable or not. These were a jury's decisions to make. *See Butler v. Gualtieri*, 41 F.4th 1329, 1340 (11th Cir. 2022) (affirming the district court's denial of sovereign immunity with respect to a state law battery claim because it is not the courts' role to "make determinations regarding the witnesses' credibility, let alone draw appropriate inferences from the proffered facts. These determinations lie squarely within the province of the jury."); *see also Snowden v. Singletary,* 135 F.3d 732, 739 (11th Cir. 1998) ("Witness credibility is the sole province of the jury."); *Sims Crane Serv., Inc. v. Ideal Steel Prods., Inc.*, 750 F.2d 884, 887 (11th Cir. 1985) (in a negligence case, reversing the district court's grant of a directed verdict and

concluding that "a juror could find gross neglect from the above evidence, and reasonable inferences therefrom"); *Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (noting, in a tortious interference case, that "when there is room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question." (quoting Restatement (Second) of Torts § 767 cmt. l)).

*4. <u>The Remaining Rule 50 Arguments Fail.</u>*

Finally, while the district court explicitly granted the Rule 50 motion on the basis that Mr. Francis had failed to make his case in chief, none of the appellees' other grounds would fare any better. In addition to renewing the summary judgment argument, the appellees raised two new issues in their Rule 50 motion—first, that Mr. Francis had not identified Lang and McBride as those who beat him, and second, that Mr. Francis had not introduced evidence of injuries that were more than de minimis. [DE 253 at 30:3–11].

As the district court aptly recognized, Mr. Francis indeed testified on the first day of trial that he saw "these two defendants, the gentlemen here, as well as with other officers hitting [him]." [DE 252 at 137:1–7]. There was, therefore, an evidentiary basis for the jury to identify McBride and Lang as Mr. Francis's assailants and judgment as a matter of law, on these identification grounds, would

be improper. *See Velazquez v. City of Hialeah*, 484 F.3d 1340 (11th Cir. 2007) ("[The Plaintiff's] testimony that two officers were present, coupled with their admission that they were present, permits the jury, if it believes that he was beaten, to find that both of the officers administered the excessive force or that one beat him while the other failed to intervene.").

And as for Mr. Francis's purportedly de minimis injuries, "a § 1983 plaintiff alleging excessive use of force is entitled to nominal damages even if he fails to present evidence of compensable injury." *Slicker*, 215 F.3d at 1231–32; *see also id.* at 1232 (citing with approval *Gibeau v. Nellis*, 18 F.3d 107, 110–11 (2d Cir. 1994) (holding that the district court erred in not instructing jury that it must award nominal damages if it found that the plaintiff's Eighth Amendment rights were violated by the defendants' use of excessive force even in the absence of proof that his injuries were proximately caused by the excessive force)). Here, Mr. Francis testified to pain in his head and ribs, difficulty breathing, and loss of consciousness, all sufficient to cause him to seek medical treatment. [DE 252 at 147:1–14]. "An award of nominal damages may be appropriate" in circumstances such as these, "when the plaintiff's injuries have no monetary value or when they are not quantifiable with reasonable certainty." *Slicker*, 215 F.3d at 1232 (citing *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996) (holding that nominal damages were not error where nearly all of the damages evidence consisted of the plaintiffs' testimony, the plaintiffs failed to

produce medical testimony to support their physical injuries, and there was evidence in the record from which the jury could have disbelieved the extent of the plaintiffs' claimed injuries)).

The Rule 50 motion cannot, then, be affirmed on either of these alternate grounds. *Cf. Bailey v. Swindell*, 89 F.4th 1324, 1329 (11th Cir.) ("Judgment as a matter of law is appropriate when a court finds that 'a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue.'" (quoting Fed. R. Civ. P. 50(a)(1)), *cert. denied*, 145 S. Ct. 162 (2024).

## CONCLUSION

For these reasons, Mr. Francis respectfully requests that this Court reverse the district court's summary judgment and Rule 50 orders and remand with instructions for the district court to conduct further proceedings in accordance with the applicable law.

Respectfully submitted,

By: */s/ Meaghan Goldstein*
Meaghan E. Goldstein, Esq.
Florida Bar No. 1024796
*mgoldstein@kttlaw.com*
**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508
*Counsel for Appellant Heninston Francis*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(a) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 10,967 words.

By: */s/ Meaghan Goldstein*
Meaghan E. Goldstein, Esq.

**[CERTIFICATE OF SERVICE TO FOLLOW]**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or parties of interest identified in the service list below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing. Pursuant to General Order No. 44 of the Eleventh Circuit Court of Appeals, no paper copies will be served in addition to the CM/ECF electronic service at this time.

By: */s/ Meaghan Goldstein*
Meaghan E. Goldstein, Esq.